142 Nev., Advance Opinion 15

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DAMIEN MARS SILVANUS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 89445

FILED

FEB 26 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of guilty but mentally ill on a charge of driver evading, eluding, or failing to stop on the signal of a peace officer, endangering other person or property. Second Judicial District Court, Washoe County; Tammy Riggs, Judge.

*Affirmed.*

Katheryn Hickman, Alternate Public Defender, and Thomas L. Qualls, Deputy Alternate Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Amanda Sage, Appellate Deputy District Attorney, Washoe County,
for Respondent.

_____

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

## OPINION

By the Court, CADISH, J.:

A jury found appellant Damien Mars Silvanus guilty but mentally ill (GBMI) of driver evading, eluding, or failing to stop on the signal of a peace officer, endangering other person or property. The jury also found Silvanus not guilty by reason of insanity (NGRI) on two other counts in the same charging document. Silvanus challenges the district court's imposition of a prison sentence for the conviction, arguing that the court was required to instead place him on probation and commit him directly to a forensic mental health facility for treatment based on the NGRI acquittals. Because neither the statute governing mental health evaluation and civil commitment after an NGRI acquittal, NRS 175.539, nor the statutes governing sentencing after a GBMI conviction, NRS 175.533 and NRS 176.057, specify how civil commitment and incarceration should be sequenced in cases with split GBMI and NGRI verdicts, the district court retains discretion to determine the proper sentence. The district court thus permissibly sentenced Silvanus to serve a prison term, followed by assessment at a forensic mental health facility once he is released. Probation is not mandatory when there is a split NGRI/GBMI verdict because the district court reserves discretion in deciding the sentence to impose on someone found GBMI under NRS 176.057(1)(b)(1). Nor do the NGRI procedures strip a district court of its discretion in imposing sentences for individuals found guilty or GBMI on other charges. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

Law enforcement responded to a report that Silvanus robbed a 76-year-old man by brandishing a machete and taking possession of the

 

man's car. When police sought to stop him, Silvanus fled, driving on the wrong side of I-80 and Keystone Avenue and running a stop sign and red light before police apprehended him. Silvanus was not taking his mental health medication at this time, having made the affirmative decision not to use them prior to these events. The State charged Silvanus with three counts: (1) robbery of a person 60 years of age or older, (2) grand larceny of a motor vehicle, and (3) driver evading, eluding, or failing to stop on the signal of a peace officer, endangering other person or property under NRS 484B.550(3)(b). At trial, the jury found Silvanus NGRI on the robbery and larceny counts, and GBMI on the driver-evading count.

Thereafter, the district court ordered that Silvanus be detained at Lake's Crossing pending a hearing on his mental health. The court also ordered that Silvanus be evaluated by two psychiatric professionals pursuant to the civil commitment procedures set forth in NRS 175.539(1)(b). Following the evaluations, the court held a hearing at which Silvanus asserted that based on the NGRI acquittals, he must "be committed . . . to Lake's Crossing, and that another hearing be set in 60 days to determine whether . . . he's a danger to himself or others." As to the driver-evading conviction, Silvanus asked that the court either continue sentencing or grant probation with the condition that he comply with Lake's Crossing treatment to make "the outcomes [of the two verdicts] consistent with each other."

The court disagreed that the statutes require civil commitment on the NGRI acquittals to precede sentencing on the GBMI conviction. It concluded that NRS 176.057 required that it sentence Silvanus consistent with the crime for which he was found GBMI and that he must receive treatment while incarcerated because he remained a person with mental

(O) 1947A

illness under NRS 176.057(1)(b). Accordingly, the district court sentenced Silvanus to serve a prison term of 28 to 72 months and ordered that he receive such treatment as is medically indicated by the diagnosis established in his psychiatric evaluations. As to the NGRI acquittals, the court ordered that following his prison term but before release, Silvanus shall be transported to Lake's Crossing for evaluation to assess whether he has been treated and no longer poses a danger to himself or others.[1]

Silvanus filed a motion to correct an illegal sentence, arguing that the plain language of the specific statutes governing civil commitment for an NGRI acquittal—NRS 178.467, NRS 178.468, and NRS 175.539— requires the district court to commit him to Lake's Crossing before imposing a sentence on the GBMI conviction under the more general sentencing statute, NRS 175.533(2). In support of his argument, Silvanus pointed to the language of the GBMI statute, NRS 175.533(2) ("[e]xcept as otherwise provided by specific statute"), and claimed that NRS 175.539 is one of the statutes that fits this exception. Under this reading, Silvanus is "otherwise" required to be placed in civil commitment after an NRS 175.539(1)(c) hearing. The district court denied the motion, pointing out that under NRS 176.335(3), a prison term must begin immediately after sentencing. The district court rejected Silvanus's exception argument, explaining that NRS 175.539 is not an otherwise more specific penalty statute because civil commitment is not criminal punishment and is instead ordered for

---

[1]Silvanus has since been paroled on the GBMI conviction and has been moved to Lake's Crossing. We perceive no problem with mootness, however, as the different jurisdictional authority under which he is confined at Lake's Crossing on parole rather than probation still has effects on him, with different requirements and different oversight of violations, as both sides acknowledged at oral argument before this court.

therapeutic and protective reasons when a defendant is acquitted but found to be a person with a mental illness who is a danger to themself or others. The court thus concluded that NRS 175.539 does not supplant criminal penalties under NRS 175.533 for a GBMI conviction. Silvanus appeals.

*DISCUSSION*

While sentencing decisions trigger an abuse-of-discretion standard of review, *see Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009), statutory interpretation issues are reviewed de novo, *Harvey v. State*, 136 Nev. 539, 541, 473 P.3d 1015, 1018 (2020). Silvanus argues on appeal that probation is the only appropriate sentence for his GBMI conviction so that the court can commit him to a forensic facility pursuant to the NGRI acquittal statute while he simultaneously serves his GBMI conviction. He argues that "probation statutes under NRS Chapter 176A give the court broad discretion to require a defendant to participate in" alternative programs as a condition of probation and that a commitment under NGRI would fall under this purview. We disagree that probation was required here.

The two statutory schemes at issue here concern NGRI procedures for civil commitment and GBMI-sentencing procedures. The relevant NGRI statute provides that where a defendant is acquitted by reason of insanity and the district court determines "that the person is a person with mental illness, the court must order that the person be committed to [a forensic mental health facility] until the person is discharged or conditionally released therefrom." NRS 175.539(2)(b). A person so committed is held under the authority of NRS 178.467, and they may be discharged following an evaluation determining that they have complied with the conditions for release and do not present a clear and present danger of harm to themselves or others. NRS 178.471(2)(a)-(b).

The relevant GBMI statutes are NRS 175.533 and 176.057. As to sentencing for a GBMI conviction, NRS 175.533(2) states that "[e]xcept as otherwise provided by specific statute, a defendant who is found guilty but mentally ill is subject to the same criminal, civil and administrative penalties and procedures as a defendant who is found guilty." Further, under NRS 176.057(1)(b)(1), the court is authorized to "[i]mpose any sentence . . . upon a defendant who pleads or is found guilty of the same offense." And if the court finds that the "defendant is mentally ill at the time of sentencing," it must include in its sentence "an order that the defendant, during the period of confinement or probation, be given or obtain such treatment as is medically indicated for the defendant's mental illness." NRS 176.057(1)(b)(2). The statute contains further safeguards requiring that the Nevada Department of Corrections separate a mentally ill incarcerated person from the general population of the prison at least until such time as a licensed psychiatrist or psychologist "finds that the person no longer requires acute mental health care." NRS 176.057(2). Even then, the person must continue to be given such treatment as is medically indicated for the person's mental illness. *Id.*

When interpreting statutes, we give effect to the plain and ordinary meaning of the words without resorting to other interpretive canons, so long as the language is clear and unambiguous. *Ramos v. State*, 137 Nev. 721, 722, 499 P.3d 1178, 1180 (2021). Thus, "[o]nly when the statute is ambiguous, meaning that it is subject to more than one reasonable interpretation, do we look beyond the language of the statute to consider its meaning in light of its spirit, subject matter, and public policy." *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011) (alteration and internal quotation marks omitted).

In resolving Silvanus's motion to correct an illegal sentence, the district court concluded that it properly ordered Silvanus to complete his prison sentence before commitment to Lake's Crossing and that its sentencing decision "complied with, and reconciled, the dual mandates of NRS 175.539(2)(b) and NRS 176.057(1)(b)." The court reasoned that the legislature likely did not contemplate a split verdict with mental health complexities but, if it had, it would have allowed for a district court to sentence a defendant to prison on the condition that they receive treatment. We agree.

The statutes governing GBMI verdicts and NGRI acquittals address the consequences of those verdicts in isolation. A plain-language reading of the relevant statutes reveals no explicit directive specifying the sequencing of incarceration and civil commitment when both verdicts are returned in the same case. The omission is understandable given that juries rarely render split NGRI and GBMI verdicts. The NGRI and GBMI statutes each address distinct consequences and serve different purposes. The NGRI statute addresses therapeutic aims and concerns for the safety of the public and the acquitted person, while the GBMI sentencing statute is penal in nature and thus authorizes the court to impose a sentence within the statutory range for the crime of conviction. At the same time, however, the GBMI statutes also expressly account for the treatment and safety concerns that underlie the NGRI framework by requiring medically indicated mental health treatment during incarceration and separation from the general prison population when the defendant remains mentally ill at the time of sentencing. NRS 176.057. Read according to their plain language, these statutory schemes operate independently and do not require civil commitment to precede the imposition or service of a criminal sentence.

This interpretation is consistent with how other jurisdictions apply statutes governing GBMI convictions and NGRI acquittals in split-verdict cases. For example, the Michigan Supreme Court addressed a similar split verdict where the defendant was found NGRI of first-degree murder but GBMI of second-degree murder. *People v. Webb*, 580 N.W.2d 884 (Mich. 1998). Like NRS 176.057(1)(b), a Michigan criminal sentencing statute directed the trial court to (1) impose any sentence authorized for the offense on the GBMI conviction and (2) order that the defendant "undergo further evaluation and be given such treatment as is psychiatrically indicated for his mental illness." *Id.* at 892 (emphasis and internal quotation marks omitted). On appeal, the defendant argued that the lower court lacked discretion to sentence him to prison because another statute required the court to "immediately commit any person who is acquitted of a criminal charge by reason of insanity to . . . the center for forensic psychiatry, for a period not to exceed 60 days." *Id.* at 891 (internal quotation marks omitted). The court concluded that the civil commitment statute did not bar the trial court from directing the defendant to commence his prison sentence instead of ordering his immediate commitment to a forensic facility. *Id.* As the court explained, while the statute provided a mechanism for determining whether a person may safely reenter society, that assessment lacks purpose when the person is also convicted of other offenses and sentenced to a long prison term. *Id.* at 891-92. This approach aligns with the district court's ruling in this case. Each Nevada statute addresses the consequences of different verdicts separately, and the criminal sentencing statute expressly directs treatment of a mentally ill inmate during incarceration, along with additional safeguards such as housing apart from the general prison population. NRS 176.057(1), (2).

SUPREME COURT
OF
NEVADA

(O) 1947A

8

In rejecting Silvanus's proposed statutory construction, the district court properly determined that the "[e]xcept as otherwise provided" language in NRS 175.533(2) applies only where the legislature has expressly limited the court's sentencing authority following a GBMI verdict. We note that NRS 176.057 is such an exception within the meaning of this clause, as it provides for some differences in sentencing a defendant found GBMI as opposed to a straight guilty verdict. The civil commitment statutes Silvanus cited cannot impose such a limitation, however, and they do not curtail the court's authority to sentence a defendant for a criminal conviction simply because the defendant was found NGRI on another charge. If the legislature intended otherwise, it would have written so in the statute. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012) ("One should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise."). The statutory interpretation canon providing that "specific statutes take precedence over general statutes," *Gaines v. State*, 116 Nev. 359, 365, 998 P.2d 166, 170 (2000), is inapplicable in this case where the statutes address entirely separate subjects. NRS 175.533(2) and NRS 176.057 concern conviction and terms of imprisonment for a GBMI verdict, whereas NRS 175.539 governs NGRI acquittal. *See State, Tax Comm'n, ex rel. Nev. Dep't of Tax'n v. Am. Home Shield of Nev., Inc.*, 127 Nev. 382, 388, 254 P.3d 601, 605 (2011) (rejecting an argument that a specific statute governing overpayment of insurance premium taxes controlled over a general statute governing interest in revenue and taxation because those statutes addressed discrete legal issues); *cf. Rogers v. State*, 142 Nev., Adv. Op. 3, 582 P.3d 622, 626 (2026) (observing, in a different context, that "the purposes underlying civil commitment differ fundamentally from those

(O) 1947A

underlying criminal punishment" and that criminal sentencing mechanisms do not migrate into civil commitment). The district court's sentencing order was also consistent with the plain language of NRS 175.539(2)(b), which authorizes commitment but does not prescribe when that commitment must occur in a split-verdict situation. Thus, the relevant statutes support the district court's sentencing order and do not compel the sequencing Silvanus proposes.

Though Silvanus contends that *State v. Ware*, 542 N.E.2d 1115, 1116 (Ohio Ct. App. 1988), should persuade us of a different outcome, *Ware* is inapposite. There, the trial court stayed the mandatory mental health hearing following the NGRI acquittal. *Id.* The court of appeals vacated the stay, concluding that the governing statute mandated the hearing and did not permit postponement until the defendant's release from prison, observing the statute's purpose of treating mentally ill defendants. *Id.* at 1118. Here, by contrast, the district court held the required hearing under NRS 175.539(1)(c), determined that Silvanus is a person with a mental illness, and structured his prison sentence accordingly by ordering appropriate treatment while in NDOC custody consistent with NRS 176.057(1)(b)(2) and commitment upon release until found not to be a danger to himself or others.

Nothing in NRS 176.057 requires a district court to grant probation when a defendant is convicted of a category B felony, as Silvanus was, and the statute instead requires that a defendant who is mentally ill at the time of sentencing receive treatment while incarcerated. Indeed, for a defendant to have a term of imprisonment corrected by motion, he must show that it is "a facially illegal sentence . . . that goes beyond the court's sentencing authority." *Martinez-Garcia v. State*, 141 Nev., Adv. Op. 16, 566

SUPREME COURT
OF
NEVADA

(O) 1947A

P.3d 1112, 1114 (2025); *see also Kassa v. State*, 137 Nev. 150, 150, 485 P.3d 750, 753 (2021) (affirming a conviction of GBMI and rejecting defendant's motion for acquittal under an NGRI defense).

While the jury found Silvanus GBMI on the driver-evading count and the court found that Silvanus remained mentally ill at the time of sentencing, NRS 176.057(1)(b)(1) allows the court to "[i]mpose any sentence that the court is authorized to impose upon a defendant who pleads or is found guilty of the same offense." Reading language into the statute to require the court to suspend a sentence in favor of probation would render this explicit grant of district court discretion meaningless. Silvanus fails to show that NRS 175.539 requires a court to sentence a defendant to probation if they are found NGRI on some charges and guilty/GBMI on another charge. Further, NRS 176.057(1)(b)(2) recognizes that sentences imposed under the GBMI statutes may include a "period of confinement *or* probation," giving district courts discretion to choose between the two forms of punishment depending on the severity of the crime, along with other factors considered when a district court evaluates whether probation is appropriate for a defendant.[2] (Emphasis added.) In rejecting Silvanus's probation argument, the district court pointed to the evidence relevant to the crime of conviction, which showed that Silvanus endangered potentially hundreds of people, evading police while driving on the wrong side of the road on I-80, the freeway offramp, and Keystone Avenue, before almost T-boning a public transit bus after having made an affirmative decision to

---

[2]Silvanus also does not explain how his interpretation would work if the crime of conviction were not probationable. *See* NRS 176A.100(1)(a) (listing offenses for which "the court shall not suspend the execution of the sentence imposed or grant probation to the person").

cease taking his mental health medications. We perceive no abuse of discretion in that decision.

## CONCLUSION

The district court acted within its discretion in ordering Silvanus to serve a prison sentence followed by evaluation at Lake's Crossing upon parole release or completion of his sentence. The phrase "[e]xcept as otherwise provided by specific statute" in NRS 175.533(2) refers to statutes that could modify or displace the criminal sentencing scheme. It does not incorporate or give controlling effect to statutes governing civil commitment, which are nonpenal and unrelated to sentencing and thus operate independently of the criminal conviction. As a result, the exception language does not resolve how a court should proceed after a split GBMI and NGRI verdict. Further, probation is not a mandated outcome in a split-verdict case because the district court retains discretion under NRS 176.057(1)(b)(1) to impose sentences in accordance with the crime resulting in the GBMI verdict. We therefore affirm the judgment of conviction.

_____, J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Lee

